UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
ENRIQUE GUADALUPE, *on behalf of*
*himself and all other persons similarly*
*situated*, et al.,

                Plaintiffs,

       - against -

TRI-STATE EMPLOYMENT,
MANAGEMENT & CONSULTING, INC.,
et al.,

             Defendants.
-----------------------------------------------------------X

**REPORT AND**
**RECOMMENDATION**
10 CV 3840 (NG) (CLP)

On August 17, 2010, plaintiff Enrique Guadalupe ("Guadalupe") commenced this

collective action on behalf of himself and all other similarly situated current and former

employees of defendants Troubleshooter Towing & Road Service, Inc. ("Troubleshooter"), Tri-

State Employment, Management & Consulting, Inc. ("Tri-State"), Anthony Cuccamo

("Cuccamo"), and John Does #1-10, alleging that defendants violated the Fair Labor Standards

Act, 29 U.S.C. § 216(b) ("FLSA"), by failing to pay wages for overtime work performed, as well

as by failing to pay both overtime wages and "spread of hours" wages pursuant to New York

Labor Law §§ 650 et seq. ("NYLL") and the supporting New York State Department of Labor

Regulations. (Compl.[1] ¶¶ 1-2). On November 29, 2011, plaintiffs filed an Amended Complaint,

also naming Mitchell Malewany ("Malewany") as a defendant. (Am. Compl.[2] ¶ 1).

     Presently before this Court is plaintiffs' request for damages stemming from the default

---

[1]Citations to "Compl." refer to the initial Complaint, filed on August 17, 2010.

[2]Citations to "Am. Compl." refer to the Amended Complaint, filed on November 29,
2011.

of defendants Tri-State and Malewany.

For the reasons set forth below, the Court respectfully recommends that plaintiffs be awarded $83,143.65 in compensatory damages, $65,866.28 in liquidated damages, and $32,981.48 in attorneys' fees and costs.


## PROCEDURAL HISTORY

Following the filing of the Complaint on August 17, 2010, defendants Cuccamo, Tri-State, and Troubleshooter filed an Answer on January 18, 2011. On February 3, 2011, an initial conference was held before the undersigned. On April 14, 2011, Gregory Hinton ("Hinton") filed a consent to join as a plaintiff in the action, and on May 4, 2011, Jonathan Zuniga ("Zuniga") similarly consented. On August 4, 2011, this Court granted the parties' joint motion to conditionally certify a FLSA Collective Action and authorized the sending of notices to all persons similarly situated. John Marino ("Marino"), Joseph McKay ("McKay"), and Wilmon Chislom ("Chislom") subsequently filed consents to join as parties to the collective action.[3]

On November 29, 2011, plaintiffs filed an Amended Complaint, which defendants answered on December 7, 2011. The parties thereafter engaged in the exchange of discovery and the Court held several settlement conferences, at which the parties attempted to resolve the dispute. On October 17, 2012, defendants Cuccamo and Troubleshooter notified the Court that they had entered into a settlement with plaintiffs. Pursuant to that settlement agreement, the district court entered an order on December 5, 2012, dismissing with prejudice all claims against

---

[3]John Marino filed his consent on September 26, 2011; Joseph McKay filed his on October 11, 2011; and Wilmon Chisolm filed his on November 15, 2011 (together with Enrique Guadalupe, Gregory Hinton, and Jonathan Zuniga, "plaintiffs").

2

defendants Troubleshooter and Cuccamo.

However, defendants Tri-State and Malewany did not enter into a settlement with plaintiffs. Rather, on July 18, 2012, counsel for defendants Tri-State and Malewany moved to withdraw from further representation of the defendants, which this Court granted on August 15, 2012. At that time, the Court gave defendants Tri-State and Malewany 30 days to find new counsel. The Court warned that if the defendants failed to obtain counsel or contact the Court by September 15, 2012, the Court would recommend that a default enter against them.

On September 24, 2012, after neither Malewany nor Tri-State had obtained counsel or contacted the Court, the undersigned issued a Report and Recommendation, recommending that default be entered and that the case be referred to the undersigned to conduct an inquest into damages. On December 4, 2012, the district court adopted the Report and Recommendation, entering a default against Tri-State and Malewany and referring the matter to the undersigned to conduct an inquest as to damages.

On December 5, 2012, this Court issued an Order directing the parties to submit papers in connection with the inquest as to damages and to appear for an inquest hearing on January 31, 2013. On January 14 and 15, 2013, plaintiffs submitted papers in support of their request for damages; nothing was ever filed by defendants. On January 31, 2013, plaintiffs' counsel appeared at the scheduled inquest proceeding and presented additional information in support of plaintiffs' request for damages. Defendants did not appear at that proceeding.

On March 22, 2013, this Court Ordered plaintiffs to provide additional information

3

explaining how plaintiffs reached their requested damages.[4]  On June 11, 2013, the Court

received the additional requested information from plaintiffs.

## FACTUAL BACKGROUND

Plaintiffs' Complaint alleges that defendants Troubleshooter and Tri-State are New York

corporations, with their principal place of business located at 125-05 Flatlands Avenue,

Brooklyn, N.Y.  (Am. Compl. ¶¶ 5, 6).  According to the Complaint, defendants Cuccamo and

Maleway are owners or part owners and principals of Troubleshooter and Tri-State.  (Id. ¶¶ 11-

12).  The Complaint alleges that the defendants "owned and operated a towing service in

Brooklyn that provided towing services" to the New York City Marshal's Service.  (Id. ¶ 19).  It

is alleged that both Troubleshooter and Tri-State are employers engaged in interstate commerce

and/or the production of goods for commerce, as defined by 29 U.S.C. §§ 206(a) and 207(a).  (Id.

¶ 7).  It is further alleged that the defendants had gross revenues in excess of $500,000 a year and

that both entities constituted "enterprises" as defined in the FLSA.  (Id. ¶¶ 8, 9).

Plaintiff Guadalupe submitted a Declaration in connection with plaintiffs' Motion for

Default Judgment, dated January 7, 2013.  (See Guadalupe Decl.[5]).  In his Declaration,

Guadalupe states that he was hired by Maleway to work for Tri-State as a tow-truck operator,

beginning on March 10, 2007 and continuing in the same job until July 8, 2010, except for two

---

[4]Having heard nothing from plaintiffs for roughly two months after issuing its Order, on June 4, 2013, the Court issued an additional Order instructing plaintiffs to provide the requested information.

[5]Citations to "Guadalupe Decl." refer to the Declaration of Enrique Guadalupe, dated January 7, 2013 and filed with the Court on January 14, 2013.

weeks at the end of each December when the company was closed. (Id. ¶¶ 2, 3, 4).  During that period, Tri-State had a contract with the Brooklyn Marshal's Office scofflaw program; although Guadalupe was employed by Tri-State for the duration of his employment, he states that he operated a tow-truck that said "Troubleshooter Towing" on it.  (Id. ¶¶ 3, 6).

According to Guadalupe, he reported directly to Malewany until 2010, although he was supervised by Cuccamo.  (Id. ¶ 7).  Beginning in 2010, Guadalupe reported directly to Cuccamo. (Id.)  Guadalupe's time was tracked through punch cards, and his paychecks were issued by Tri-State until November 13, 2009; after that time, his paychecks were issued by Troubleshooter. (Id. ¶¶ 5, 8).  Guadalupe admits that he was paid for all of the time that he worked, averaging 50 hours per week, but, on occasion, reaching a maximum of 67 hours per week.  (Id. ¶ 8). According to Guadalupe, his typical schedule for Monday through Thursday began at 3:00 a.m. and ended between 3:00 p.m. to 5:00 p.m.  (Id. ¶ 9).  On Fridays, Guadalupe's schedule was to work from 3:00 p.m. to midnight.  (Id.)

Guadalupe's rate of pay was $16.67 per hour when he worked for Tri-State; the rate increased to $18.00 per hour when Troubleshooter started paying Guadalupe in 2010, but that rate dropped to $15.50 per hour after three weeks, remaining stagnant for the remainder of Guadalupe's time with defendants.  (Id. ¶ 10).  Guadalupe also states that he received weekly performance bonuses ranging between $50 and $300, calculated according to a formula that was based on the number of cars towed.  (Id. ¶ 11).  According to Guadalupe, he was paid for overtime hours beyond 40 hours per week but at the same rate of pay as his regular hours until Troubleshooter began issuing the paychecks on December 11, 2009.  (Id. ¶ 12).  Guadalupe alleges that his bonuses were never factored in when considering the overtime rate of pay.  (Id. ¶

13).  Guadalupe further claims that even though he regularly worked more than 10 hours a day, Mondays through Thursdays, he never received spread of hours pay.  (Id. ¶ 17).

Attached to Guadalupe's Declaration are copies of paystubs that he received from his employers, and he certifies that payroll records received from Paychex, Inc. accurately reflect his weekly paychecks during the time that he worked for Tri-State and Troubleshooter.  (Id. ¶ 16).

The other plaintiffs have submitted similar Declarations, setting forth the periods worked, the hours worked, and their rate of pay.  McKay, an opt-in plaintiff, states in his Declaration that he was hired by Malewany to work for Tri-State as a tow-truck operator, beginning January 1, 2009, and that he worked there continuously until October 16, 2009.  (McKay Decl.[6] ¶¶ 1-3). McKay's paychecks were issued by Tri-State; he reported to Malewany and was also supervised by Cuccamo.  (Id. ¶¶ 4, 5).  Although McKay was paid for all of the time he worked, averaging 55 hours per week, but sometimes as many as 71 hours per week, McKay claims that he was paid for overtime hours at the regular rate of $15.00 per hour.  (Id. ¶¶ 6, 8).  Like Guadalupe, McKay received performance bonuses based on the number of cars towed, but these amounts were not factored into his overtime rate of pay, nor was he paid a spread of hours premium for days on which he worked more than 10 hours.  (Id. ¶¶ 9-11).

Chislom, also an opt-in plaintiff, alleges that he worked for Tri-State from January 1, 2008 through February 27, 2009, during which time he averaged 50 hours per week, but sometimes worked as many as 67 hours per week, and that he was paid $17.77 per hour for all

---

[6]Citations to "McKay Decl." refer to the Declaration of Joseph McMay, dated January 7, 2013 and filed with the Court on January 15, 2013.

hours he worked, including when he worked more than 40 hours per week.  (Chislom Decl.[7] ¶¶ 1, 2, 6, 8, 10).  Like the other plaintiffs, Chislom received performance bonuses that were not factored into his overtime pay, and he did not receive spread of hours pay.  (Id. ¶¶ 9, 11, 12).

Marino, Zuniga, and Hinton submitted declarations presenting similar facts.  Marino worked for Tri-State from May 10, 2007 until January 16, 2008, at a pay rate of $16.67 per hour.  (Marino Decl.[8] ¶¶ 2, 8).  Zuniga was hired to work for Tri-State beginning on May 17, 2006 and continuing until November 11, 2009.  (Zuniga Decl.[9] ¶¶ 2, 4).  Zuniga was paid at the rate of $13.88 per hour until July 2006, when he received a raise to $15.00 an hour, which was his rate of pay until March 2007, when Zuniga received a second raise to $18.00 per hour; Zuniga earned $18.00 per hour for the remainder of his employment.  (Id. ¶ 10).  Hinton was hired by Tri-State on November 1, 2005 at the rate of pay of $17.78 per hour; his rate of pay dropped to $16.25 per hour on December 11, 2009, after which he worked only three more weeks.  (Hinton Decl.[10] ¶¶ 2, 10).

Marino, Zuniga, and Hinton claim that they worked overtime and received performance bonuses, but that they were paid for their overtime hours at their regular rate of pay and that their performance bonuses were not considered in the overtime rate.  (Marino Decl. ¶¶ 6-11; Zuniga

---

[7]Citations to "Chislom Decl." refer to the Declaration of William Chislom, dated January 7, 2013 and filed with the Court on January 15, 2013.

[8]Citations to "Marino Decl." refer to the Declaration of John Marino, dated January 7, 2013 and filed with the Court on January 15, 2013.

[9]Citations to "Zuniga Decl." refer to the Declaration of Jonathan Zuniga, dated January 7, 2013 and filed with the Court on January 15, 2013.

[10]Citations to "Hinton Decl." refer to the Declaration of Gregory Hinton, dated January 7, 2013 and filed with the Court on January 15, 2013.

Decl. ¶¶ 8, 9, 11-13; Hinton Decl. ¶¶ 8, 9, 11-13).  None of these individuals received spread of

hours pay.  (Marino Decl. ¶ 12; Zuniga Decl. ¶ 14; Hinton Decl. ¶ 14).  All three were hired by

Malewany, all were supervised at times by Malewany and Cuccamo, and all drove trucks bearing

the Troubleshooter name.[11]  (Marino Decl. ¶¶ 2, 4, 5; Zuniga Decl. ¶¶ 2, 6, 7; Hinton Decl. ¶¶ 2,

6, 7).


DISCUSSION

I.  <u>Default Judgment</u>

    A.  <u>Legal Standard</u>

Rule 55(a) of the Federal Rules of Civil Procedure provides that "[w]hen a party against

whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that

failure is shown by affidavit or otherwise, the clerk must enter the party's default."  Fed. R. Civ.

P. 55(a).  Rule 55 sets forth a two-step process for an entry of default judgment.  <u>See</u> <u>Enron Oil</u>

<u>Corp. v. Diakuhara</u>, 10 F.3d 90, 95-96 (2d Cir. 1993).  First, the Clerk of Court enters the default

pursuant to Rule 55(a) by notation of the party's default on the Clerk's record of the case.  <u>See</u> <u>id.</u>

Second, after the Clerk of Court enters a default against a party, if that party fails to appear or

otherwise move to set aside the default pursuant to Rule 55(c), the court may enter a default

judgment.  <u>See</u> Fed. R. Civ. P. 55(b).

Providing guidance as to when a default judgment is appropriate, the Second Circuit has

cautioned that since a default judgment is an extreme remedy, it should only be entered as a last

---

[11]Zuniga and Hinton state that the trucks that they drove always had Troubleshooter's
name on them.  (<u>See</u> Zuniga Decl. ¶ 6; Hinton Decl. ¶ 6).  Marino states that some of the trucks
he drove bore Troubleshooter's name.  (<u>See</u> Marino Decl. ¶ 4).

resort.  See Meehan v. Snow, 652 F.2d 274, 277 (2d Cir. 1981).  While the Second Circuit has

recognized the "push on a trial court to dispose of cases that, in disregard of the rules, are not

processed expeditiously [and] . . . delay and clog its calendar," it has held that the district court

must balance that interest with its responsibility to "[afford] litigants a reasonable chance to be

heard."  Enron Oil Corp. v. Diakuhara, 10 F.3d at 95-96.  Thus, in light of the "oft-stated

preference for resolving disputes on the merits," default judgments are "generally disfavored,"

and doubts should be resolved in favor of the defaulting party.  Id.  Accordingly, plaintiffs are not

entitled to a default judgment as a matter of right simply because a party is in default.  See Erwin

DeMarino Trucking Co. v. Jackson, 838 F. Supp. 160, 162 (S.D.N.Y. 1993) (noting that courts

must "supervise default judgments with extreme care to avoid miscarriages of justice").

　　　The Court has significant discretion to consider a number of factors in deciding whether

to grant a default judgment, including:  (1) whether the grounds for default are clearly

established; (2) whether the claims were pleaded in the complaint, thereby placing the defendants

on notice, see Fed. R. Civ. P. 54(c) (stating "[a] default judgment must not differ in kind from, or

exceed in amount, what is demanded in the pleadings"); King v. STL Consulting LLC, No. 05

CV 2719, 2006 WL 3335115, at *4-5 (E.D.N.Y. Oct. 3, 2006) (holding that Rule 54(c) is not

violated in awarding damages that accrued during the pendency of a litigation, so long as the

complaint put the defendant on notice that the plaintiff may seek such damages); and (3) the

amount of money potentially involved – the more money involved, the less justification for

entering the default judgment.  Hirsch v. Innovation Int'l, Inc., No. 91 CV 4130, 1992 WL

316143, at *2 (S.D.N.Y. Oct. 19, 1992).  Additionally, the Court may consider whether material

issues of fact remain, whether the facts alleged in the complaint state a valid cause of action,

whether plaintiffs have been substantially prejudiced by the delay involved, and whether the default judgment might have a harsh effect on the defendants.  See Pacific M. Int'l Corp. v. Raman Int'l Gems, Ltd., No. 10 CV 9250, 2012 WL 3194968, at *5 (S.D.N.Y. Aug. 7, 2012).

The burden is on the plaintiffs to establish their entitlement to recovery.  See Greyhound ExhibitGroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992), cert. denied, 506 U.S. 1080 (1993).  When a default judgment is entered, the defendants are deemed to have admitted all well-pleaded allegations in the complaint pertaining to liability.  See id.  For the purposes of an inquest, a court accepts as true all factual allegations in the complaint, except those claims relating to damages.  See Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981).

### B.  Entry of Default Judgment

#### 1.  Liability for Damages Alleged in Complaint

In this case, plaintiffs allege that defendants violated FLSA Sections 207(a)(1) and 215(a), 29 U.S.C. §§ 207(a)(1), 215(a), by paying overtime at the "straight time" rate, rather than at the rate of one-and-a-half times the regular rate, which calculation should have included their performance bonuses.  (Am. Compl. ¶ 40; Pls.' 2/5 Ltr.[12] at 1).  Plaintiffs also allege that defendants violated New York Labor Law not only by failing to pay plaintiffs the proper amount in overtime, but also by failing to pay the employees "one hour's pay at the basic minimum hourly wage rate" for any days in which the "spread of hours" between the beginning of the

---

[12]Citations to "Pls.' 2/5 Ltr." refer to the supplemental letter filed by plaintiffs on February 5, 2013.

employee's day and the end of the day exceeded ten hours.[13]  (See Am. Compl. ¶¶ 45, 50; see also 12 NYCRR § 142-2.4)).  Plaintiffs seek to recover an amount equivalent to underpaid overtime wages and liquidated damages, pursuant to the FLSA, 29 U.S.C. § 216(b), and the NYLL, N.Y. Lab. §§ 198, 663; unpaid spread of hours wages, pursuant to the NYLL, N.Y. Lab. § 663 and N.Y. Comp. Codes R. & Reg. tit. 12 § 142-2.4; and attorneys' fees and costs.[14]  (Am. Compl. at 13-14).

### a)  FLSA

To establish a claim under the FLSA, plaintiffs must prove the following:  (1) the defendant is an enterprise participating in commerce or the production of goods for the purpose of commerce; (2) the plaintiffs are 'employees' within the meaning of the FLSA; and (3) the employment relationship is not exempted from the FLSA.  Edwards v. Cmty. Enters., Inc., 251 F. Supp. 2d 1089, 1098 (D. Conn. 2003) (citing Tony & Susan Alamo Found. v. Sec. of Labor, 471 U.S. 290, 295 (1985)).

A defendant is an "[e]nterprise engaged in commerce or in the production of goods for commerce" if the defendant is an enterprise that:

> has employees engaged in commerce or in the production of
> goods for commerce, or that has employees handling, selling,
> or otherwise working on goods or materials that have been

---

[13]See NYLL §§ 650 et seq. and its regulations in N.Y. Comp. Codes R. & Regs. tit. 12 § 137-1.7 (West 2011).  (See Compl. ¶ 50).

[14]In their Complaint, plaintiffs also seek a designation of this action as a collective action pursuant to the FLSA, a declaratory judgment, an injunction, punitive damages, and pre- and post-judgment interest.  (Compl. at 13-14).  However, none of these additional forms of relief are sought in the papers filed by plaintiffs in conjunction with the default of defendants Tri-State and Maleway.  (See generally, Memorandum of Law of Plaintiffs in Support of Plaintiffs' Request for Damages at Inquest, dated January 14, 2013 ("Pls.' Mem.")).

> moved in or produced for commerce by any person; and . . .
> whose annual gross volume of sales made or business done is
> not less than $500,000.

29 U.S.C. § 203(s)(1)(A). In their Complaint, plaintiffs allege that the corporate defendant has

been and continues to be an employer engaged in interstate commerce and/or the production of

goods for commerce within the meaning of the FLSA. (Am. Compl. ¶ 7). Plaintiffs further

allege that the corporate defendant has had gross revenues in excess of $500,000 and used goods

produced in interstate commerce "for all relevant times." (Id. ¶ 8). As for defendant Malewany,

plaintiffs allege that he is an owner or part owner and principal of Troubleshooter and Tri-State,

and that he had the power to hire and fire employees, set wages and schedules, and retain their

records. (Id. ¶ 12).

     The FLSA defines an "employee" as "any individual employed by an employer." 29

U.S.C. § 203(e)(1); Edwards v. Cmty. Enters., Inc., 251 F. Supp. 2d at 1098. An "employer" is

"any person acting directly or indirectly in the interest of an employer in relation to an employee .

. . ." 29 U.S.C. § 203(d). "Person" is defined as "an individual, partnership, association,

corporation, business trust, legal representative, or any organized group of persons." 29 U.S.C. §

203(a). To "employ" means "to suffer or permit to work." 29 U.S.C. § 203(g). The FLSA

covers both "employees who in any workweek [are] engaged in commerce or in the production of

goods for commerce" and those persons who are "employed in an enterprise engaged in

commerce or in the production of goods for commerce. . . ." 29 U.S.C. § 206(a).

     Plaintiffs allege in their Complaint that Mr. Guadalupe was an employee engaged in

commerce and/or in the production of goods for commerce, as defined by the FLSA. (Am.

Compl. ¶ 25). It follows, therefore, that for purposes of this default, he – and those similarly

situated – qualify as an "employee" under the FLSA.  Additionally, the Court does not find any

basis for exempting the employment relationship at issue from the FLSA's provisions.[15]

Moreover, plaintiffs allege in their Complaint that during the period of Mr. Guadalupe's

employment, he was scheduled to work approximately 13 hours per day on Monday through

Thursday, and nine hours per day on Friday.  (Am. Compl. ¶ 26).  Plaintiffs further allege that he

often was required to stay past the end of his shift.  (Id.)  The Complaint states that Mr.

Guadalupe routinely worked approximately 65 hours per week, but was not paid overtime for the

hours he worked beyond 40.  (Id. ¶¶ 27, 30, 33).  Plaintiffs make the same allegations for other

individuals similarly situated to Mr. Guadalupe.  (Id. ¶ 35).

Thus, because this is a default, the Court accepts plaintiffs' uncontested allegations as

true, and respectfully recommends that plaintiffs be deemed to have sufficiently set forth the

necessary elements to state a claim under the FLSA.

2) NYLL Claims

Plaintiffs also allege that defendant violated the NYLL.  Like the FLSA, the NYLL

establishes certain minimum wage rates and mirrors the FLSA's requirement that employees be

compensated at an overtime rate of one-and-one-half times their regular hourly pay for time

worked in excess of 40 hours in a week.  See 12 N.Y.C.R.R. § 142-2.2; see, e.g., Noble v. 93

Univ. Place Corp., 303 F. Supp. 2d 365, 376 (S.D.N.Y. 2003).  In addition, under the NYLL, an

employer is required to provide "one hour's pay at the basic minimum hourly wage rate" on days

in which the employee works a spread of hours greater than 10 hours ("spread of hours" wages).

12 N.Y.C.R.R. § 142-2.4(a).

---

[15]See 29 U.S.C. § 213(a) setting forth the exemptions.

To recover under the NYLL, plaintiffs must prove that they are "employees" and that the defendant is an "employer" as defined by the statute.  See Lauria v. Heffernan, 607 F. Supp. 2d 403, 407 (E.D.N.Y. 2009).  Unlike the FLSA, the NYLL does not require that a defendant achieve a certain minimum in annual sales or business in order to be subject to the law.  See N.Y. Lab. Law § 651(6) (defining employer as "any individual, partnership, association, corporation, limited liability company, business trust, legal representative, or any organized group of persons acting as employer").  Similarly, an employee is simply defined as "any individual employed or permitted to work by an employer in any occupation. . . ." N.Y. Lab. Law § 651(5).

In this case, plaintiffs allege that "Mr. Guadalupe was employed by defendants within the meaning of the New York Labor Law, §§ 2 and 651." (Am. Compl. ¶¶ 44, 49).  Plaintiffs further allege that defendants willfully failed to pay overtime as prescribed by the NYLL (id. ¶¶ 45, 46), and willfully failed to pay an additional hour's pay at the minimum wage for each day they worked more than ten hours, in violation of the NYLL.  (Id. ¶¶ 50, 51).

Accordingly, based on these uncontested allegations, the Court respectfully recommends that plaintiffs be deemed to have adequately alleged the elements necessary to state a claim under the New York Labor Law.

### 2.  Default Determination

Based upon a review of the allegations in the Complaint, which are undisputed at this time, the Court finds that plaintiffs have sufficiently established liability as to warrant entry of a default judgment for the requested damages.  See 29 U.S.C. § 207(a)(1); N.Y. Comp. Codes R. & Regs. tit. 12 § 142-2.4 (West 2011); see also FTC Credit Practices Rule, 29 C.F.R. § 778.205 (2011) (regarding bonus time).

14

Here, it is beyond dispute that defendants are in default.  Although defendants initially responded to the Complaint, they failed to obtain new counsel after the court granted their attorney's request to withdraw and they have not appeared in this action since that time.  The failure by the corporate defendant to obtain counsel in this case constitutes a failure to defend because the corporate defendant, as a corporation, cannot proceed in federal court pro se.  See Shapiro, Bernstein & Co. v. Cont'l Record Co., 386 F.2d 426, 427 (2d Cir. 1967) (per curiam) (stating that "it is settled law that a corporation cannot appear other than by its attorney"); see also Jones v. Niagara Frontier Transp. Auth., 722 F.2d 20, 22 (2d Cir. 1983) (discussing the rationale for requiring corporations, as "artificial" entities, to appear through counsel only). Moreover, despite an explicit Order from this Court warning that a default would enter if the defendants failed to obtain new counsel or otherwise contact the Court, defendants failed to comply with the Order.  They also failed to respond to plaintiffs' request that default be entered, see Hirsch v. Innovation Int'l, Inc., 1992 WL 316143, at *2 (holding that "[defendant's] default is crystal clear – it does not even oppose this motion") and they did not appear for the inquest hearing.  Thus, plaintiffs' evidence on damages is undisputed.

Here, defendants' failure to comply with the Court's Order to appear in this action or respond to plaintiffs' papers requesting default warrants the entry of a default judgment in this matter.  Additionally, the amount of money involved in this case is not significant, unlike a case in which there are potentially millions of dollars involved.  See id. (entering default but giving defendant 20 days to set aside the default because plaintiff's damages request ran well into the millions of dollars).

Given the numerous opportunities afforded to defendants, and their apparent lack of

15

interest in participating in these proceedings, the Court finds no compelling reason to delay
further. Accordingly, it is respectfully recommended that default judgment be entered against
defendants Tri-State and Malewany.

II.  <u>Damages</u>

    A. <u>Legal Standard</u>

    When a default judgment is entered, the defendants are deemed to have admitted all well-
pleaded allegations in the Complaint pertaining to liability. <u>See</u> <u>Greyhound Exhibitgroup, Inc. v.</u>
<u>E.L.U.L. Realty Corp.</u>, 973 F.2d at 158; <u>Montcalm Publ'g Corp. v. Ryan</u>, 807 F. Supp. 975, 977
(S.D.N.Y. 1992) (citing <u>United States v. Di Mucci</u>, 879 F.2d 1488, 1497 (7th Cir. 1989)); <u>Au</u>
<u>Bon Pain Corp. v. Artect, Inc.</u>, 653 F.2d at 65; <u>Deshmukh v. Cook</u>, 630 F. Supp. 956, 959-60
(S.D.N.Y. 1986; 6 Moore's Federal Practice ¶ 55.03[2] at 55-16 (2d ed. 1988). However, the
plaintiffs must still prove damages in an evidentiary proceeding at which the defendants have the
opportunity to contest the claimed damages. <u>See</u> <u>Greyhound Exhibitgroup, Inc. v. E.L.U.L.</u>
<u>Realty Corp.</u>, 973 F.2d at 158. "'While a default judgment constitutes an admission of liability,
the quantum of damages remains to be established by proof unless the amount is liquidated or
susceptible of mathematical computation.'" <u>Levesque v. Kelly Commc'ns, Inc.</u>, No. 91 CV
7045, 1993 WL 22113, at *4 (S.D.N.Y. Jan. 25, 1993) (quoting <u>Flaks v. Koegel</u>, 504 F.2d 702,
707 (2d Cir. 1974)).

    When a court enters a default judgment and the amount of damages sought does not
consist of a sum certain, Rule 55(b) of the Federal Rules of Civil Procedure provides that: "The
Court may conduct hearings or make referrals – preserving any federal statutory right to a jury
trial – when, to enter or effectuate judgment, it needs to . . . determine the amount of damages."

16

Fed. R. Civ. P. 55(b)(2)(B).  While "the court must ensure that there is a basis for the damages specified in a default judgment, it may, but need not, make the determination through a hearing." Fustok v. Conticommodity Servs., Inc., 122 F.R.D. 151, 156 (S.D.N.Y. 1988) (collecting cases), aff'd, 873 F.2d 38 (2d Cir. 1989).

In this case, an inquest hearing was held on January 31, 2013 before the undersigned, at which plaintiffs appeared but defendants did not.

B.  Damages Requested by Plaintiffs

1.  Overtime Pay Under the FLSA and the NYLL

Plaintiffs seek overtime pay pursuant to both the FLSA and the NYLL.  (See Am. Compl. ¶¶ 37-42, 43-47).[16]  Plaintiffs assert that although defendants paid them overtime for the hours worked, they were paid at the regular rate of pay. (Pls.' Mem. at 2).  They allege that until December 11, 2009, defendants failed to pay overtime at the rate of one-and-a-half times the regular rate of pay, as required under the law.  (Id.)  Since plaintiffs Zuniga, McKay, Chislom, and Marino were not employed after December 11, 2009, they are seeking damages for unpaid overtime for the entire period of their employment.  (Id.)  Only Hinton and Guadalupe were employed by defendants after December 11, 2009, and they seek damages up to December 11, 2009.[17]  (Id.)  In calculating the rate of overtime paid both before and after December 11, 2009, plaintiffs claim that defendants failed to take into account the bonuses paid in determining the

---

[16]Given that the NYLL has a longer statute of limitations, and given that most of the plaintiffs seek overtime for more than three years, plaintiffs' Complaint seeks recovery under both the FLSA and the NYLL.  (See discussion infra at p. 19).

[17]The December 11, 2009 implementation of overtime pay affected Hinton for two weeks and affected Guadalupe for approximately six months.  (See Pls.' Mem. at 2).

17

regular rate of pay. (Id.)

### a) FLSA – Bonuses

Under the FLSA, an employee's regular rate of pay includes all compensation received, except for certain explicitly enumerated exceptions. 29 U.S.C. § 207(e). (See Pls.' 2/5 Ltr. at 1). With respect to bonuses, 29 C.F.R. § 778.208 provides: "Bonuses which do not qualify for exclusion from the regular rate as one of these types must be totaled in with other earnings to determine the regular rate on which overtime pay must be based." 29 C.F.R. § 778.208. The exclusions enumerated in the regulation are as follows:

> [D]iscretionary bonuses, gifts, and payments in the nature of gifts
> on special occasions, contributions by the employer to certain
> welfare plans and payments made by the employer pursuant to
> certain profit-sharing, thrift[,] and savings plans.

29 C.F.R. § 778.208. Discretionary bonuses are defined as only those bonuses over which the employer retains discretion "both as to the fact of the payment and as to the amount," and for which "[t]he employee has no contract right, express or implied, to any amount." Id. § 778.211(a), (b). In contrast, the regulation states that "[b]onuses which are announced to employees to induce them to work more steadily or more rapidly or more efficiently or to remain with the firm are regarded as part of the regular rate of pay." Id. § 778.211(c).

### b) NYLL – Bonuses

With respect to the New York Labor Law, the term "wages" includes incentive compensation that has been "earned" by an employee. See Bader v. Wells Fargo Home Mortg., Inc., 773 F. Supp. 2d 397, 417 (S.D.N.Y. 2011) (citation omitted). "'A bonus is 'earned' when the employee acquires a vested interest in the award and its payment is not conditioned upon some occurrence or left to the discretion of the employer.'" Id. (citing Koss v. Wackenhut Corp.,

18

704 F. Supp. 2d 362, 369 (S.D.N.Y. 2010)); cf., Levion v. Societe Generale, 503 Fed. Appx. 62, 64 (2d Cir. 2012) (explaining that because the compensation agreement at issue was based upon "the success of his group as a whole" rather than "upon plaintiff's own personal productivity," the incentive bonus did not constitute "wages," as the term is used in the New York Labor Law) (internal quotation marks and citation omitted).

c)  Analysis – Bonuses

Plaintiffs contend that in this case, the bonuses they received were computed based on a predetermined formula that was dependent on the number of cars towed, and that the bonuses were designed to induce the drivers to perform more work. (See Pls.' 2/5 Ltr. at 3). Plaintiffs argue that since their performance bonuses are not discretionary bonuses, the bonuses should have been included in computing plaintiffs' regular rate of pay in order to determine the amount of overtime owed.

After carefully considering plaintiffs' arguments, which are undisputed due to defendants' default, the Court finds that the bonuses paid to plaintiffs should have been factored into plaintiffs' rate of pay. As such, the Court respectfully recommends that plaintiffs' overtime rates be determined by the Court to include the bonuses each plaintiff received each week, if any.

d)  Analysis – Willfulness

The statute of limitations for willful violations of the FLSA allows for only three years of damages (see 29 U.S.C. § 255), while under the statute of limitations applicable to the NYLL, plaintiffs may recover damages going back for six years, regardless of whether the violation is willful or not. See N.Y. Lab. Law § 663(3); see also Gurung v. Malhotra, 851 F. Supp. 2d 583, 591 (S.D.N.Y. 2012). A violation of the FLSA is "willful" when an employer "'either knew or

19

showed reckless disregard for the matter of whether its conduct was prohibited.'" Pineda v. Masonry Const., Inc., 831 F. Supp. 2d 666, 674-75 (S.D.N.Y. 2011) (quoting Herman RSR Sec. Servs. Ltd., 172 F.3d 132, 141 (2d Cir. 1999)).  The standard under the NYLL "'does not appreciably differ.'" Id. (quoting Moon v. Kwon, 248 F. Supp. 2d 201, 235 (S.D.N.Y. 2002)). "Where a default judgment is entered against a defendant under the FLSA, allegations that the violations were willful are deemed admitted." Id. (citation omitted).

Guadalupe seeks an award of overtime pay beginning on March 10, 2007 until July 8, 2010; McKay seeks overtime beginning January 1, 2009 until October 16, 2009; Chisolm seeks overtime from January 1, 2008 through February 27, 2009; Marino seeks overtime from May 10, 2007 through January 16, 2008; Zuniga seeks overtime from May 17, 2006 through November 11, 2009; and Hinton seeks overtime from November 1, 2005 through December 20, 2009. (See Pls.' Mem. at 1).  Since in this case plaintiffs sufficiently allege that defendants acted willfully in failing to pay their employees overtime for the majority of plaintiffs' period of employment (see Am. Compl. ¶¶ 40, 45, 50), the three year statute of limitations under the FLSA applies.  This means that all of plaintiffs' claims arising between August 17, 2007 and August 17, 2010 fall under the FLSA.  For those plaintiffs who have claims extending beyond the FLSA's statute of limitations – namely, all of the plaintiffs except for McKay and Chisolm – they may recover under the NYLL for their claims that fall between August 17, 2004 to August 16, 2007.

2.  Analysis – Overtime Pay

All of the plaintiffs seek an award of overtime wages because defendants failed to factor in their bonus amounts when calculating the overtime rate.  (See Pls.' Mem. at 2-3).  Except for

20

Guadalupe and Hinton, who received overtime pay after December 11, 2009, the remaining

plaintiffs seek an award of overtime pay for the entire period of their employment. (See id.)

Thus, plaintiffs have calculated the amount of overtime owed using one and a half times

their regular pay, including bonus amounts, times the number of hours of overtime worked. (See

Tr. at 5). In reaching this amount, plaintiffs first determined the regular rate of pay of each

plaintiff by calculating the total amount of money that each plaintiff earned in a week – including

amounts earned as bonuses. (See id.) They then divided that sum by the total number of hours

worked by that plaintiff during that week. (See id.) The resulting figure is that particular

plaintiff's rate of pay for the week. (See id.) The plaintiffs then multiplied their regular rate of

pay by 1.5 to obtain the overtime rate owed for each week that each plaintiff worked. (See id.)

Using this method, plaintiffs claim that they are owed the following amounts in overtime wages:

| Plaintiff | Number of weeks worked[18] | Total Regular Hours Worked | Total Overtime Hours Worked | Total Amount Owed | Total Amount Paid | Outstanding Balance |
|---|---|---|---|---|---|---|
| Guadalupe | 167 | 6,496.25 | 1,992.00 | $176,102.52 | $160,052.62 | $16,049.90[19] |
| Hinton | 210 | 8,299.75 | 2075.04 | $238,401.68 | $217,135.93 | $21,265.75[20] |

---

[18]These dates are slightly different from the dates provided in plaintiffs' spreadsheets containing their calculations for the amounts owed (see Supplemental Declaration of David Stein, Esq., filed on June 11, 2013 ("Stein 6/11 Decl."), Exs. DD, EE, FF, GG, HH, II), as the dates included in those spreadsheets refer to pay days, rather than the actual span of time during which plaintiffs worked for defendants.

[19]This amount is slightly less than the amount sought by plaintiffs. Instead, it reflects the Court's summation of the figures listed by plaintiffs in the "Balance Due" column of the spreadsheet provided by plaintiffs; it appears that plaintiffs incorrectly totaled the amount owed. (See Stein 6/11 Decl., Ex. DD).

[20]This amount reflects the amount provided by plaintiffs. (See Stein 6/11 Decl., Ex. EE). This amount is, however, slightly less than the amount calculated by the Court ($21,268.30) using the hours worked (regular and overtime), rates (regular and overtime), and amounts paid as

| | | | | | | |
|---|---|---|---|---|---|---|
| Marino | 35 | 1,348.5 | 521.63 | $41,984.66 | $36,886.81 | $4,965.50[21] |
| Zuniga | 178 | 7,008.5 | 2,837.36 | $224,541.54 | $196,311.00 | $28,230.52[22] |
| Chislom | 57 | 2,176.75 | 682.575 | $67,326.06 | $60,207.16 | $7,118 .90[23] |
| McKay | 41 | 1,562.25 | 635 | $43,973.14 | $38,458.75 | $5,513.08[24] |
| TOTAL | | | | | | $83,143.65 |

provided by plaintiffs for the pay periods between November 4, 2005 and December 24, 2009. Since this award of damages is being made pursuant to a default, the Court is not recommending an award greater than what was requested by plaintiffs in their papers.

[21]This amount reflects the amount provided by plaintiffs. (See Stein 6/11 Decl., Ex. FF). The amount is, however, less than the amount calculated by the Court ($5,097.90) using the hours worked (regular and overtime), rates (regular and overtime), and amounts paid as provided by plaintiffs for the pay periods between May 25, 2007 and January 18, 2008. Here again, the Court has only recommended the amount sought by plaintiffs.

[22]This amount reflects the amount provided by plaintiffs. The Court notes, however, that this amount is not an accurate summation of the figures listed by plaintiffs in the "Balance Due" column of the spreadsheet provided by plaintiffs. (See Stein 6/11 Decl., Ex. HH). This amount is less than the amount calculated by the Court ($28,230.71) using the hours worked (regular and overtime), rates (regular and overtime), and amounts paid as provided by plaintiffs for the pay periods between May 26, 2006 and November 20, 2009.

[23]This amount is less than the amount provided by plaintiffs. Instead, it reflects the difference between the Court's summations of the alleged payments due and the alleged payments made from the spreadsheet provided by plaintiffs. (See Stein 6/11 Decl., Ex. II). This amount is also less than the amount calculated by the Court ($7,119.09) using the hours worked (regular and overtime), rates (regular and overtime), and amounts paid as provided by plaintiffs for the pay periods between January 11, 2008 and February 27, 2009.

[24]This amount is less than the amount provided by plaintiffs. Instead, it reflects the amount calculated by the Court using the hours worked (regular and overtime), rates (regular and overtime), and amounts paid as provided by plaintiffs for the pay periods between January 16, 2009 and October 16, 2009. (See Stein 6/11 Decl., Ex. GG).

The calculations of hours of overtime worked are derived from defendants' payroll records. (Stein Decl.[25] ¶ 11). According to plaintiffs' counsel, there were four weeks of payroll records missing for Guadalupe, so plaintiffs used Guadalupe's prior work history to estimate his overtime hours for that period. (Id. ¶ 13, Ex. D). For Hinton, plaintiffs were unable to locate records for the first half of his career with defendants. (Id. ¶ 14, Ex. E). Accordingly, plaintiffs assumed that the average number of hours worked during the first half of his employment was equal to the average number of hours Hinton worked during the second half. (Id.) Similarly, with respect to Marino, the records of time worked during the first half of his career with defendants were missing, so plaintiffs estimated the amount of hours Marino worked based on the average number of hours reflected in the records for the second half of his employment. (Id. ¶ 15, Ex. F). There were no missing records for McKay, so the damages McKay seeks are based on the number of hours reflected in the payroll records. (Id. ¶ 16, Ex. G). With respect to Chislom, there was only one week for which no records could be located and for Zuniga, there were only a few scattered weeks of missing records. (Id. ¶¶ 17, 18, Exs. H, I). Plaintiffs used the available records to estimate the hours worked by Chislom and Zuniga for which no records are available. (Id.)

Having reviewed the defendants' payroll records, supplemented by the pay stubs provided by plaintiffs, and considering the estimations made to account for the missing records, the Court finds that the requested number of overtime hours is appropriate, as are the rates, adjusted to account for bonuses, which were used to calculate each plaintiff's overtime rate.

--------

[25]Citations to "Stein Decl." refer to the Declaration in Support of Plaintiffs' Memorandum in Support of Inquest for Damages, filed by David Stein on January 15, 2013.

Accordingly, it is respectfully recommended that defendants be ordered to pay overtime pursuant to the FLSA and the NYLL as follows:  Guadalupe is awarded $16,049.90; Hinton is awarded $21,265.75; Marino is awarded $4,965.50; Zuniga is awarded $28,230.52; Chisolm is awarded $7,118.90; and McKay is awarded $5,513.08.  In sum, it is recommended that a total of $83,143.65 be paid to plaintiffs for the overtime wages they are owed.

### 3. Spread of Hours Pay Under NYLL

Plaintiffs also seek an award of damages equivalent to unpaid spread of hours pay that they did not receive during the period of their employment. (See Pls.' Mem. at 3).[26]

Section 142-2.4 of the NYLL provides that "[a]n employee shall receive one hour's pay at the basic minimum hourly wage rate in addition to the minimum wage required in this Part for any day in which:  (a) the spread of hours exceeds 10 hours; or (b) there is a split shift; or (c) both situations occur."  12 N.Y.C.R.R. § 142-2.4 (West 2011).  The "spread of hours" is defined as "the interval between the beginning and end of an employee's workday," including "time off for meals plus intervals off duty."  Id. § 142-3.16.  Plaintiffs argue that even though they were making more than the minimum wage, the regulation contains no limitation and case authority supports an award of spread of hours wages even for employees making above the minimum hourly wage.  (See Pls.' Mem. at 3 (citing Yang v. ABCL Corp., 427 F. Supp. 2d 327, 340-41 (S.D.N.Y. 2005))).

---

[26]Although plaintiffs do not specify in their Memorandum of Law the amount they believe they are owed for spread of hours pay, they do argue that "[p]laintiffs were working in excess of ten hours per shift, four days per week, and defendants failed to pay them an extra hour's pay at the minimum wage for any of these days."  (See id.)  However, the exhibits provided by plaintiffs indicate that they only worked three shifts of more than 10 hours each week, not four.  (See Stein Decl., Exs. D, E, F, G, H, I).  Since the Court concludes that plaintiffs are not entitled to an award for spread of hours, this discrepancy is not relevant.

In Yang, the court found that Section 142-2.4 applied to all eligible employees, regardless of whether or not they made more than the minimum wage and despite a statement by the Department of Labor to the contrary. Yang v. ACBL Corp. et al., 427 F. Supp. 2d at 339-340. The Department of Labor had issued an opinion letter interpreting the statute as precluding spread of hours pay for employees paid more than the minimum wage:

> [I]f an employee's total weekly compensation is equal to or greater than the total minimum wages due the employee for that workweek, including compensation for an additional hour for each day in which the 'spread of hours' exceeds ten [], no additional payments are due the employee because the employee earns sufficiently more than the statutory minimum wage.

Jenkins v. Hanac, Inc., 493 F. Supp. 2d at 558. The Yang court expressed a concern with the Department's opinion letter "carv[ing] out an exception to the spread of hours provision for workers who are properly paid overtime and make more than the minimum wage." Id. at 339. Finding that there was no statutory support for such an exception, the court in Yang held that the plaintiff was entitled to spread of hours wages, despite the fact that plaintiff earned more than the minimum wage. Id. at 340.

However, numerous cases since Yang have disagreed with both its holding and with the court's failure to defer to the Department of Labor's opinion letter. Sosnowy v. A. Perri Farms, Inc., 764 F. Supp. 2d 457, 473 (E.D.N.Y. 2011) (citing Chan v. Triple 8 Palace, Inc., No. 03 CV 6048, 2006 WL 851749, at *21 (S.D.N.Y. March 30, 2006)); see also Rui Xiang Huang v. J & A Entm't, Inc., No. 09 CV 5587, 2012 WL 6863918, at *8 (E.D.N.Y. Dec. 3, 2012) (noting that "[t]he majority of district courts in this circuit are in accord with the New York Department of Labor's position that those earning more than the minimum wage are not entitled to spread of hours pay"), report & recommendation adopted by 2013 WL 173738 (Jan. 16, 2013); Ellis v.

25

Common Wealth Worldwide Chauffeured Transp. of NY, LLC, No. 10 CV 1741, 2012 WL
1004848, at *7-8 (E.D.N.Y. March 23, 2012) (citing cases); Almeida v. Aguinaga, 500 F. Supp.
2d 366, 370 (S.D.N.Y. 2007) (stating that "the spread-of-hours provision is properly limited to
enhancing the compensation of those receiving only the minimum required by law"); Jenkins v.
Hanac, Inc., 493 F. Supp. 2d 556, 558 (E.D.N.Y. 2007) (noting that Section 142-2.4 "'does not
ensure additional compensation to employees whose wages sufficiently exceed [the minimum
wage] floor'") (citation omitted).

 In accordance with these opinions, the Court declines to follow Yang and defers to the
Department of Labor's interpretation of the statute.  Since there is no question that plaintiffs'
hourly rates ranged from $13.88 to $18.00 an hour, well in excess of the applicable minimum
wage (see Zuniga Decl. ¶ 10; Guadalupe Decl. ¶ 10; Hinton Decl. ¶ 10; McKay Decl. ¶ 8; Marino
Decl. ¶ 8; Chisolm Decl. ¶ 8), the Court respectfully recommends that plaintiffs not receive an
additional amount for spread of hours wages.

  4. Liquidated Damages

 Plaintiffs allege that defendants willfully violated both the FLSA and the NYLL, and
accordingly, seek 100% liquidated damages pursuant to the FLSA, and 25% liquidated damages
pursuant to the NYLL.[27]  (See Am. Compl. ¶¶ 1, 2; Pls.' Mem. at 4).

---

  [27]The NYLL was amended in 2011, such that a plaintiff is now allowed to recover 100%
liquidated damages pursuant to Section 198(1-a).  See N.Y. Lab. Law § 198(1-a)(2011); see also
Paz v. Piedra, 2012 WL 121103, at *12 n.10; Gunawan v. Sake Sushi Rest., 2012 WL 4369754,
at *9, n.11; Garcia v. Giorgio's Brick Oven & Wine Bar, No. 11 CV 4689, 2012 WL 3339220, at
*4 (S.D.N.Y. Aug. 15, 2012), report & recommendation adopted by 2012 WL 3893537
(S.D.N.Y. Sept. 7, 2012).  However, the NYLL may not be retroactively applied.  See e.g.,
McLean v. Garage Mgmt. Corp., Nos. 10 CV 3950, 09 CV 9325, 2012 WL 1358739, at *9
(S.D.N.Y. April 19, 2012).  Accordingly, only 25% liquidated damages are available under the
NYLL to plaintiffs in this case.

a)  Liquidated Damages Pursuant to the FLSA

Pursuant to the terms of the FLSA:

> Any employer who violates the provisions of section 206 or section 207 of this title shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages.

29 U.S.C. § 216(b); see, e.g., Li Ping Fu v. Pop Art Int'l, Inc., No. 10 CV 8562, 2011 WL 4552436, at *3 (S.D.N.Y. Sept. 19, 2011), report & recommendation adopted as modified by 2011 WL 6092309.  "As the Second Circuit has noted, the FLSA's liquidated damages 'are not a penalty exacted by the law, but rather compensation to the employee occasioned by the delay in receiving wages due caused by the employer's violation of the FLSA."  Id. (citing Herman v. RSR Sec. Servs. Ltd., 172 F.3d 132, 142 (2d Cir. 1999) (other citations omitted)).

A defendant-employer who opposes an award of liquidated damages under the FLSA "bears the burden of establishing, by plain and substantial evidence, subjective good faith and objective reasonableness."  Id. (quoting Reich v. Southern New Eng. Telecomm. Corp., 121 F.3d 58, 71 (2d Cir. 2007)); see also Barfield v. New York City Health & Hosps. Corp., 537 F.3d 132, 150 (explaining that for an employer "[t]o establish the requisite subjective 'good faith,' an employer must show that it took 'active steps to ascertain the dictates of the FLSA and then act to comply with them'") (quoting Herman v. RSR Sec. Servs. Ltd., 172 F.2d at 142).  The Second Circuit has commented that this is a difficult burden for an employer to meet, and as a consequence, "'double damages are the norm, single damages the exception.'"  Li Ping Fu v. Pop Art Int'l, Inc., 2011 WL 4552436, at *3 (quoting Reich v. S. New Eng. Telecomm. Corp., 121 F.3d at 71).

27

b) Liquidated Damages Pursuant to the NYLL

The NYLL also provides for an award of liquidated damages. See N.Y. Lab. Law §

198(1-a), 663(1). Prior to 2009 when the NYLL was amended, the NYLL had a requirement that

the employer be found to have acted in a "willful" manner, which essentially mirrored the

willfulness requirement found in the FLSA. See Copantitla v. Fiskardo Estiatorio, Inc., 788 F.

Supp. 2d 253, 317 (S.D.N.Y. 2011) (citing Kuebel v. Black Decker, Inc., 643 F.3d 352, 366,

2011 WL 1677737, at *11 (2d Cir. May 1, 2011)). After the NYLL was amended in 2009, the

willfulness requirement was replaced with a provision that made liquidated damages

presumptively available, "unless the employer affirmatively proves that it acted in good faith."

Paz v. Piedra, No. 09 CV 3977, 2012 WL 121103, at *12 n.10 (S.D.N.Y. Jan. 12, 2012); see also

Pineda v. Masonry Const., Inc., 831 F. Supp. 2d at 674.

c) Recovery Pursuant to Both the FLSA and the NYLL

While some courts in the Second Circuit have awarded liquidated damages under both the

FLSA and NYLL for the same violations, reasoning that the two awards serve different purposes,

see Yu G. Ke v. Saigon Grill, Inc., 595 F. Supp. 2d 240, 261–62 (S.D.N.Y. 2008) (finding that

the FLSA's liquidated damages provision is compensatory while the NYLL's is punitive, and

therefore "plaintiff may recover both"), other courts have declined to recognize this distinction

because the underlying predicate – i.e., an employer's willful violation of the law – is the same

for both statutes. See Pineda-Herrera v. Da-Ar-Da, Inc., No. 09 CV 5140, 2011 WL 2133825, at

*4 (E.D.N.Y. May 26, 2011) (holding that an award of liquidated damages under the FLSA

precluded a similar award under the NYLL for the same violation); Chan v. Sung Yue Tung

Corp., No. 03 CV6048, 2007 WL 313483, at *28–29 (S.D.N.Y. Feb. 1, 2007) (finding that

liquidated damages were only appropriate for unpaid spread of hour wages, for which the FLSA

provides no remedy).[28]

Nonetheless, despite the perhaps divergent purposes of the liquidated damages provisions

of the FLSA and the NYLL, the undersigned is not persuaded that such damages should be

awarded under both the FLSA and the NYLL in this action. See Paz v. Piedra, 2012 WL 121103,

at *12 (refusing to allow recovery of liquidated damages pursuant to both the FLSA and the

NYLL because both statutes compensate plaintiffs for "the harm caused by the defendants'

culpable state of mind") (internal quotation marks and citation omitted); Pinesa v. Masonry

Const., Inc., 831 F. Supp. 2d at 682-84.  But see Gunawan v. Sake Sushi Rest., 2012 WL

4369754, at *9 (recognizing that NYLL was amended in such a way as to make it more difficult

to argue that the NYLL and FLSA compensate different harms, but nonetheless awarding

liquidated damages pursuant to both the FLSA and NYLL in a case filed before the amendments

to NYLL went into effect); Callier v. Superior Bldg. Servs., Inc., No. 09 CV 4590, 2010 WL

5625906, at *4 (E.D.N.Y. Dec. 22, 2010), report & recommendation adopted by 2011 WL

222458 (E.D.N.Y. Jan. 21, 2011) (awarding liquidated damages pursuant to both the FLSA and

the NYLL for claims arising within three years of the date the complaint was filed).

As such, since plaintiffs alleged willfulness and because defendants did not appear in the

action to defend themselves, the Court respectfully recommends that plaintiffs be allowed to

---

[28]As one court in this district recently noted, because the NYLL was amended in 2011 to
provide for 100% liquidated damages, "[t]o the extent that federal and state statutes now provide
for essentially identical remedies with respect to liquidated damages, it is harder to argue that
they are designed to compensate a plaintiff for disparate harms" under the amended statutory
framework. Gunawan v. Sake Sushi Rest., No. 09 CV 5018, 2012 WL 4369754, at *9 n.11
(E.D.N.Y. Sept. 24, 2012).  However, since the actions giving rise to this matter occurred prior to
the 2011 amendments to the NYLL, the Court need not address this issue.

recover 100% of the damages they are owed under the FLSA for the three years prior to the filing

of their Complaint (i.e., from August 17, 2007 to August 17, 2010), and 25% of the damages they

are owed under the NYLL for the three years prior to that (i.e., from August 17, 2004 to August

17, 2007).  The Court does not recommend that they be awarded 125% of the full amount they

are owed pursuant to both the FLSA and the NYLL.

d)  Liquidated Damages Award

As noted, the Court respectfully recommends that plaintiffs be awarded 100% liquidated

damages under the FLSA for wages owed between August 17, 2007 and August 17, 2010, see

Santillan v. Henao, 822 F. Supp. 2d 284, 297-98 (E.D.N.Y. 2011) (explaining that numerous

courts in this district have held that a defendant's default alone "may suffice to support a finding

of wilfulness" (collecting cases)), and 25% liquidated damages under the NYLL for wages owed

between August 17, 2004 and August 16, 2007.  Accordingly, the Court hereby respectfully

recommends that plaintiffs be awarded liquidated damages in the amount of $60,063.03[29]

pursuant to the FLSA, and $5,803.25 pursuant to the NYLL, totaling $65,866.28[30]  More

specifically, each plaintiff should be awarded the following:

_____

[29]Since August 17, 2007 is the first date on which plaintiffs are entitled to receive
liquidated damages under the FLSA, the plaintiffs calculated liquidated damages pursuant to the
FLSA beginning as of August 24, 2007, which covered work performed during the week of
August 17, 2007 through August 23, 2007.

[30]Liquidated damages were calculated using the figures from the "Balance Due" column
in the spreadsheets provided by plaintiffs, rather than using the total amounts requested by
plaintiffs.  (See Stein 6/11 Decl., Exs. DD-II).  Although this leads to minor inconsistencies
between the amount owed as actual damages and the amount owed as liquidated damages for
some of the plaintiffs, the Court believes this to be the most accurate way of computing the
liquidated damages because it accounts for the dates during which the FLSA applies and the
dates during which the NYLL applies.

| Plaintiff | FLSA Liquidated Damages | NYLL Liquidated Damages | Total |
|-----------|-------------------------|-------------------------|-------|
| Guadalupe | $13,010.52 | $759.85 | $13,770.37 |
| Hinton | $12,596.95 | $2,167.20 | $14,764.15 |
| Marino | $3,376.00 | $430.46 | $3,806.46 |
| Zuniga | $18,447.58 | $2,445.74 | $20,893.32 |
| Chislom | $7,118.90 | $0 | $7,118.90 |
| McKay | $5,513.08 | $0 | $5,513.08 |
| **TOTAL** | $60,063.03 | $5,803.25 | $65,866.28 |

III.  Attorneys' Fees and Costs

Plaintiffs also request reasonable attorneys' fees and costs in connection with this action, pursuant to 29 U.S.C. § 216(b) and NYLL § 198.  (Pls.' Mem. at 5).  "Both the FLSA and the NYLL are fee-shifting statutes, entitling [plaintiffs] to recover [their] reasonable attorneys' fees and costs.  Gurung v. Malhotra, 851 F. Supp. 2d 583, 595 (S.D.N.Y. 2012) (citing 29 U.S.C. § 216(b); N.Y. Lab. Law § 198(1-a)).

A.  Reasonable Attorneys' Fees

1.  Legal Framework

"The district court retains discretion to determine . . . what constitutes a reasonable fee." Millea v. Metro-North R.R. Co., 658 F.3d 154, 166 (2d Cir. 2011) (citing LeBlanc-Sternberg v. Fletcher, 143 F.3d 748, 758 (2d Cir. 1998)).  "The traditional starting point for determining a reasonable attorneys' fee award is the 'lodestar' amount, which results in a presumptively reasonable fee."  Dunn v. Advanced Credit Recovery, Inc., No. 11 CV 4023, 2012 WL 676350, at *5 (S.D.N.Y. March 1, 2012) (citing Perdue v. Kenny A., – U.S. – , 130 S. Ct. 1662, 1672-73 (2010); Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany, 522 F.3d 182,

31

188-90 (2d Cir. 2008)); see also Millea v. Metro-North R.R. Co., 658 F.3d at 166-67 (explaining

that it is legal error to fail to calculate the lodestar "as a starting point").

    To determine the lodestar amount, a court must determine "the number of hours

reasonably expended on the litigation" and multiply that number "by a reasonable hourly rate."

Moore v. Diversified Collection Servs., Inc., No. 07 CV 397, 2013 WL 1622949, at *1

(E.D.N.Y. March 19, 2013), report & recommendation adopted by 2013 WL 1622713 (April 15,

2013); see also Adusumelli v. Steiner, Nos. 08 CV 6932, 09 CV 4902, 10 CV 4549, 2013 WL

1285260, at *2 (S.D.N.Y. March 28, 2013) (explaining that "[c]ourts in the Second Circuit use

the familiar 'lodestar' method of calculating reasonable attorney's fees – multiplying the number

of hours reasonably expended by a reasonable hourly rate") (citing Millea v. Metro-North R.R.,

Co., 658 F.3d at 166); Dunn v. Advanced Credit Recovery, Inc., 2012 WL 676350, at *5.

    Although the lodestar approach results in a "presumptively reasonable" fee, however, "it

is not 'conclusive in all circumstances.'" Millea v. Metro-North R.R. Co., 658 F.3d at 167

(quoting Perdue v. Kenny A., 130 S. Ct. at 1673).  Rather, in "rare circumstances," a court may

adjust the lodestar "when [the lodestar method] 'does not adequately take into account a factor

that may properly be considered in determining a reasonable fee.'" Id. (quoting Perdue v. Kenny

A., 130 S. Ct. at 1673); see also Adusumelli v. Steiner, 2013 WL 1285260, at *2.  In other words,

"a court may not adjust the lodestar based on factors already included in the lodestar calculation

itself because doing so effectively double-counts those factors." Id. As the court explained in

Dunn v. Advanced Credit Recovery, Inc., a court should "first use[] the lodestar method to

determine the amount of attorneys' fees and then, if necessary, adjust[] the resulting figure using

the [Johnson v. Georgia Highway Express, Inc.] factors to reflect consideration of any special

circumstances."[31]  2012 WL 676350, at *5, n.6.

The burden is on the party moving for attorney's fees to justify the hourly rates sought.

See Hensley v. Eckerhart, 461 U.S. 424, 437, 103 S. Ct. 1933, 1943 (1983).  In addition to the

parties' evidentiary submissions, the Court may consider its own experience and familiarity with

the case and with rates generally charged.  See Cruz v. Local Union No. 3, 34 F.3d 1148, 1160

(2d Cir. 1994) (noting that "[a] district court's 'choice of rates [is] well within [its] discretion'")

(quoting Cabrera v. Jakobovitz, 24 F.3d 372, 393 (2d Cir. 1994), cert. denied, 513 U.S. 876

(1994)).  To "inform and assist the court in the exercise of its discretion, the burden is on the fee

applicant to produce satisfactory evidence – in addition to the attorney's own affidavits – that the

requested rates are in line with those prevailing in the community for similar services by lawyers

of reasonably comparable skill, experience, and reputation."  Blum v. Stenson, 465 U.S. 886, 895

n.11 (1984).

Indeed, the Second Circuit has held that in calculating the presumptively reasonable fee,

"courts 'should generally use the hourly rates employed in the district in which the reviewing

court sits.'"  Simmons v. New York City Transit Auth., 575 F.3d at 174 (holding that when

---

[31]The Johnson factors are as follows:
> (1) the time and labor required; (2) the novelty and difficulty of the
> questions; (3) the skill required to perform the legal service
> properly; (4) the preclusion of employment by the attorney due to
> acceptance of the case; (5) the customary fee; (6) whether the fee is
> fixed or contingent; (7) the time limitations imposed by the client or
> the circumstances; (8) the amount involved and the results obtained;
> (9) the experience, reputation, and ability of the attorneys; (10) the
> "undesirability" of the case; (11) the nature and length of the
> professional relationship with the client; and (12) awards in similar
> cases.

Johnson v. Georgia Highway Express, Inc., 488 F.2d 714, 717-19 (5th Cir. 1974).

awarding attorney's fees, there is a presumption in favor of relying on the rates where the case is litigated, not where the attorneys are located) (citations omitted).

    2.  Analysis

    In this case, plaintiffs were represented by the firm of Samuel & Stein ("the Firm"), which is located at 38 West 32nd Street, Suite 1110, New York, N.Y. 10001.  In accordance with New York State Association for Retarded Children, Inc. v. Carey, the Firm submitted contemporaneous billing records, setting forth the dates and amount of time during which services were rendered, the rate at which the services were charged, along with the name of the attorney and a description of services performed.  711 F.2d 1136, 1148 (2d Cir. 1983).  (See Stein Decl., Ex. A).  Plaintiffs seeks attorneys' fees in the amount of $32,315.11, representing services performed by attorneys David Stein and David Nieporent.  (Stein Decl. ¶ 3).  According to Mr. Stein's Declaration, he is a partner at the Firm and he has practiced law since 1990, earning an hourly rate in this district of $350 per hour.  (Id. ¶ 6).  Mr. Stein states that David Nieporent is a senior associate at the Firm, and that Mr. Nieporent has practiced law since 2001 and charges at the rate of $275 per hour.  (Id. ¶ 6).

    Based on the Court's knowledge of the rates generally charged for this type of work in connection with an FLSA default, the Court finds that the rates of $350 per hour for a partner and $275 per hour for a senior associate are within the range of billing rates of similarly experienced attorneys working on comparable matters in the Eastern District.  See, e.g., Gutman v. Klein, No. 03 CV 1570, 2009 WL 3296072, at *2 (E.D.N.Y. Oct. 13, 2009) (stating that rates between $300 and $400 for partners and between $200 and $300 for senior associates are within the reasonable range in the Eastern District of New York); Jermine v. Dennis, No. 08 CV 3072, 2012 WL

34

4482769, at *23 (E.D.N.Y. Sept. 28, 2012) (allowing a partner to charge $375 per hour and an experienced associate $250 per hour in a FLSA case that was "relatively straightforward . . . since the defendants defaulted," but was made more complex because the litigation was a class action).

Turning to the number of hours billed, Mr. Stein billed a total of 70.60 hours for legal work performed in connection with this matter; Mr. Nieporent billed 38.35 hours. (See Stein Decl. ¶ 3; see also Pls.' Mem. at 6). In reviewing a fee application, the court "should exclude excessive, redundant or otherwise unnecessary hours." Quaratino v. Tiffany & Co., 166 F.3d 422, 425 (2d Cir. 1999) (citing Hensley v. Eckerhart, 461 U.S. at 433-35, 440); see also Rotella v. Board of Educ., No. 01 CV 434, 2002 WL 59106, at *3-4 (E.D.N.Y. Jan. 17, 2002) (applying percentage reduction to fees of several attorneys for excessive and redundant billing); Quinn v. Nassau City Police Dep't., 75 F. Supp. 2d 74, 78 (E.D.N.Y. 1999) (reducing one attorney's fees by 20% and another's by 30% for unnecessary and redundant time); Perdue v. City Univ. of N.Y., 13 F. Supp. 2d 326, 346 (E.D.N.Y. 1998) (imposing a 20% reduction for redundancy); American Lung Ass'n v. Reilly, 144 F.R.D. 622, 627 (E.D.N.Y. 1992) (finding that "use of so many lawyers for relatively straightforward legal tasks was excessive and led to duplication of work" and deducting 40% of plaintiffs' lawyer's hours).

Similarly, courts routinely apply across-the-board reductions for vague entries, see, e.g., In re Olson, 884 F.2d 1415, 1428-29 (D.C. Cir. 1989) (reducing fees based on lack of specificity in description of work performed); DeVito v. Hempstead China Shop, Inc., 831 F. Supp. 1037, 1045 (E.D.N.Y. 1993) (reducing fee request by 40% for, inter alia, insufficient descriptions of work performed), rev'd & remanded on other grounds, 38 F.3d 651 (2d Cir. 1994); Cabrera v.

35

Fischler, 814 F. Supp. 269, 290 (E.D.N.Y. 1993) (reducing fees by 30% for vague entries with insufficient descriptions of work performed), rev'd in part & remanded on other grounds, 24 F.3d 372 (2d Cir.), cert. denied, 513 U.S. 876 (1994); Nu-Life Constr. Corp. v. Board of Educ., 795 F. Supp. 602, 607-08 (E.D.N.Y. 1992) (reducing fees by 30% due in part to lack of specificity in descriptions of work performed); Meriwether v. Coughlin, 727 F. Supp. 823, 827 (S.D.N.Y. 1989) (finding an overall reduction of 15% warranted based on vague descriptions of work performed).

Having reviewed the billing records submitted by counsel and being familiar with the proceedings to date, and having supervised discovery and held numerous conferences in this matter, the Court finds that the number of hours charged in this matter is reasonable, given the amount of work performed. Accordingly, based on the hourly rates set forth above, and the hours billed on this matter, the Court respectfully recommends that plaintiffs be awarded $32,315.11 in attorneys' fees.[32]

B. Reasonable Costs

Plaintiffs also requests $666.37 in costs for filing fees ($350), service of process fees ($40), and postage costs ($15.12), transcripts ($218.50), and travel costs ($42.75). (See Stein Decl. ¶ 3, Ex. A; Pls.' Mem. at 5-6). Based on a review of the record, the Court finds these costs to be reasonable, and respectfully recommends that plaintiffs be awarded $666.37 in costs. See

---

[32]This amount reflects the amount requested by plaintiffs. The Court notes a discrepancy between the amount requested ($32,315.11) and the amount specified in the accompanying chart ($32,968.75) provided by plaintiffs. (See Pls.' Mem. at 5-6). While both amounts are less than the amount calculated by the Court using the hours worked and rates provided by Mr. Stein and Mr. Nieporent ($35,256.25), the Court recommends that the lesser amount sought by plaintiffs, $32,315.11, be awarded due to the lack of clarity in plaintiffs' submission.

36

Finkel v. Triple A Grp., Inc., 708 F. Supp. 2d 277, 290-91 (E.D.N.Y. 2010) (awarding $818.53 in costs for filing fees, service of process, legal research, and postage); see also Tlacoapa v. Carregal, 386 F. Supp. 2d 362, 374 (S.D.N.Y. 2005) (citing Kuzma v. Internal Revenue Serv., 821 F.2d 930, 933-34 (2d Cir. 1987) (explaining that "[i]dentifiable out-of-pocket disbursements for items such as photocopying, travel, and telephone costs are generally taxable . . . and are often distinguished from nonrecoverable routine office overhead, which must be absorbed within the attorney's hourly rate"). In sum, the Court recommends that plaintiffs be awarded $32,315.11 in attorneys' fees, plus an additional $666.37 in costs, totaling $32,981.48.

CONCLUSION

The Court respectfully recommends that plaintiffs' motion for entry of a default judgment be granted, and that plaintiffs be awarded the following damages: (1) $83,143.65 for unpaid overtime wages; (2) $65,866.28 in liquidated damages; and (3) $32,981.48 in attorneys' fees and costs. More specifically, the Court recommends that the following be awarded to each plaintiff in overtime wages and liquidated damages:

| Plaintiff | Unpaid Wages | Liquidated Damages | Total |
|-----------|--------------|--------------------|-------|
| Guadalupe | $16,049.90 | $13,770.37 | $29,820.27 |
| Hinton | $21,265.75 | $14,764.15 | $36,029.90 |
| Marino | $4,965.50 | $3,806.46 | $8,771.96 |
| Zuniga | $28,230.52 | $20,893.32 | $49,123.84 |
| Chislom | $7,118.90 | $7,118.90 | $14,237.80 |
| McKay | $5,513.08 | $5,513.08 | $11,026.16 |

| **TOTAL** | $149,009.93 |
|-----------|-------------|

Thus, including attorneys' fees and costs in the amount of $32,981.48, the Court respectfully recommends that plaintiffs be awarded $181,991.41 in total.

Any objections to this Report and Recommendation must be filed with the Clerk of the Court, with a copy to the undersigned, within fourteen (14) days of receipt of this Report. Failure to file objections within the specified time waives the right to appeal the District Court's order. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72(b); Small v. Secretary of Health & Human Servs., 892 F.2d 15, 16 (2d Cir. 1989).

The Clerk is directed to send copies of this Report and Recommendation to the parties either electronically through the Electronic Case Filing (ECF) system or by mail.

**SO ORDERED.**

Dated: Brooklyn, New York
        July 31, 2013

/S/  CHERYL POLLAK

Cheryl L. Pollak
United States Magistrate Judge
Eastern District of New York

38